UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CHARLOTTE TSOSIE,
Personal representative of the Estate of
BOBBIE TSOSIE-HOHENSTEIN,
deceased,
    Plaintiff,

vs.                                                Case No. 13 CV 132 JAP/LFG

UNITED STATES OF AMERICA,
    Defendant.

**MEMORANDUM OPINION AND ORDER**

In its MOTION TO TRANSFER (Doc. No. 17) (Motion), Defendant the United States of America (United States) asks the Court to transfer this case to the United States District Court in the Western District of Oklahoma. Plaintiff Charlote Tsosie (Plaintiff), a resident of New Mexico suing as personal representative of the estate of Bobbie Tsosie-Hohenstein (Tsosie-Hohenstein), opposes the Motion.[1] Because the United States has met its burden to show that the essential witnesses are located in the Western District of Oklahoma where Tsosie-Hohenstein received the alleged substandard medical care, the Court will grant the Motion.

    I. Background

This Court has jurisdiction over the claims in Plaintiff's COMPLAINT (Doc. No. 1), which are brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. *See* 28 U.S.C. § 1346(b). On June 20, 2012, Plaintiff filed an administrative tort claim with the United States

---

[1] *See* PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE (Doc. No. 19) (Response). The United States filed DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO TRANSFER (Doc. No. 20) (Reply).

1

Department of Health and Human Services (Department) as required under 28 U.S.C. § 2675(a).[2] The Department failed to make a disposition within six months, therefore, Plaintiff may bring suit. *Id.*

Plaintiff resides in Casa Blanca, New Mexico. (Compl. ¶1). Plaintiff's daughter, Tsosie-Hohenstein, was a member of the Laguna Pueblo and lived on the Laguna Pueblo Reservation in New Mexico. (*Id.* ¶¶ 6, 8.) Plaintiff asserts that the negligent treatment of Tsosie-Hohenstein at the Lawton Indian Hospital in Lawton, Oklahoma (LIH) caused Tsosie-Hohenstein to experience a severe hypoxic brain injury and ultimately resulted in Tsosie-Hohenstein's death on August 19, 2010. (*Id.* ¶ 13) Plaintiff brought this survival and wrongful death action against the United States, as the owner and operator of LIH. (*Id.* ¶ 7) .

In the late evening hours of June 22, 2010, Tsosie-Hohenstein, then 28 years old, was brought to the emergency room at LIH with an ankle injury. (*Id.* ¶ 9.) However, just before arriving at LIH, Tsosie-Hohenstein went into respiratory arrest. (Joint Status Report and Provisional Discovery Plan (Doc. No. 11) "JSR" at 3.) Personnel at LIH determined that Tsosie-Hohenstein had consumed a significant amount of alcohol and may have taken narcotics.

---

[2] Section 2675(a) provides:

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . .

(Compl. ¶ 9.) During Tsosie-Hohenstein's evaluation, Dr. Wilhelmina Dawson (Dr. Dawson) inserted an endotracheal tube, presumably for respiratory depression. (*Id.* ¶ 10.) Instead of inserting the tube in Tsosie-Hohenstein's trachea, Dr. Dawson inserted the tube into Tsosie-Hohenstein's esophagus. (*Id.*) Dr. Dawson failed to notice the misplacement of the tube during her subsequent examination of Tsosie-Hohenstein and failed to notice the misplacement on Tsosie-Hohenstein's chest x-ray film. (*Id.*) In the early morning hours of June 23, 2010, Tsosie-Hohenstein was transferred by private ambulance to Comanche County Memorial Hospital where the emergency room physician promptly recognized and corrected the tube misplacement. (*Id.* ¶ 11; JSR at 3.) Unfortunately, despite the correction, Tsosie-Hohenstein's brain was deprived of oxygen for several hours causing permanent anoxic brain injury. (Compl. ¶ 12.) On June 27, 2010, Tsosie-Hohenstein was transported to San Juan Regional Medical Center in New Mexico. (Opinion of Dr. Michael G. Seneff Resp. Ex. 1 at 2 .) Tsosie-Hohenstein was then transferred to Bloomfield Nursing & Rehabilitation Center where she died on August 19, 2010. (*Id.*; Resp. at 5.) From the time she arrived at LIH to the time of her death, Tsosie-Hohenstein never regained consciousness. (Compl. ¶ 12.) An autopsy, performed on August 21, 2010 in New Mexico, indicates that Tsosie-Hohenstein's death was caused by complications from anoxic brain injury. (Resp. Ex. 1 at 2.)

      Plaintiff alleges that agents and employees of the United States at LIH, including Dr. Dawson, failed to treat Tsosie-Hohenstein according to the appropriate standard of medical care at the LIH emergency room. In Claim I: Survival Action, Plaintiff contends that Plaintiff and Tsosie-Hohenstein's beneficiaries are entitled to damages for Tsosie-Hohenstein's pain, suffering, and mental anguish prior to her death, for Tsosie-Hohenstein's loss of companionship prior to her death, and for Tsosie-Hohenstein's loss of enjoyment of life. In Claim II: Wrongful

3

Death, Plaintiff asserts that Plaintiff and Tsosie-Hohenstein's beneficiaries are entitled to damages for funeral and burial expenses, for medical bills, for pain, suffering, and mental anguish, for the loss of Tsosie-Hohenstein's society and companionship, and for the loss of income resulting from Tsosie-Hohenstein's death.

The United States asks the Court to transfer this case to the Western District of Oklahoma, where LIH is located and where the alleged negligence occurred, to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Plaintiff opposes the transfer stating that she and her witnesses would be inconvenienced and financially burdened if they were required to travel to Oklahoma for depositions and/or trial.

II. Standard of Review

Under the Federal Tort Claims Act, both this Court and the Western District of Oklahoma have jurisdiction over this case:

> Subject to the provisions of chapter 171 of this title, the district courts, . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Venue of this Federal Tort Claims Act case is governed by 28 U.S.C. § 1402, which provides that "[a]ny civil action on a tort claim against the United States . . . may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Change of venue is governed by 28 U.S.C. § 1404(a), which states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

4

civil action to any other district or division where it might have been brought." Thus, this case may be tried either in this Court or in the District Court for the Western District of Oklahoma. In most cases, the Court should honor the Plaintiff's choice of forum, "unless the balance in the defendant's favor is shown by clear and convincing evidence" that demonstrates the transfer serves the interest of justice and is more convenient for the parties and witnesses. *Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 n.13 (10th Cir. 2010) (citation omitted). The United States argues that the most efficient and convenient location for the management and trial of this case is the Western District of Oklahoma where LIH is located and where Tsosie-Hohenstein incurred the injuries alleged in the Complaint.

In considering a motion to transfer under § 1404(a), the Court considers several factors: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (internal quotation marks omitted). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1996)). And, "unless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *Id.* at 965 (internal quotation marks omitted). However, courts give less weight to a plaintiff's choice of forum

5

"where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan.1993) (transferring case to district where accident between a train and a car occurred).

   III.  Discussion

The United States argues that in light of the allegations in this case Plaintiff's choice of forum should receive only minimal consideration because all of the events relating to the cause of action occurred in Oklahoma and none of the critical, disputed events surrounding Tsosie-Hohenstein's medical treatment occurred in New Mexico.  In the JSR, the United States contends that Tsosie-Hohenstein died as a result of alcohol intoxication and the effects from other toxic substances she ingested on June 22, 2010.  The United States contends that the critical information concerning its liability can only be learned from witnesses located in Oklahoma, especially  Nicole Cheromiah and Quiton Silverhorn, neither of whom have been located, who were with Tsosie-Hohenstein prior to her arrival at LIH and who transported her to the LIH on June 22, 2010.  The primary evidence related to Tsosie-Hohenstein's medical care would come from the medical personnel who treated Tsosie-Hohenstein on June 22 and 23, 2010.  All of these persons are in Oklahoma.  However, the only experts identified in this case do not reside in Oklahoma.

Plaintiff admits that the negligent "act or omission complained of" occurred in the Western District of Oklahoma; however, she asks the Court to give deference to her choice of venue as the most convenient for her and her witnesses, who are members of Plaintiff's family. Plaintiff maintains that although the alleged medical malpractice occurred in Oklahoma, a few days after she was brought to LIH Tsosie-Hohenstein was transported to a New Mexico hospital

6

and nursing facility where she remained until her death. In addition, Tsosie-Hohenstein's autopsy was performed in New Mexico. Notably, Plaintiff has not asserted malpractice claims against the New Mexico medical providers. In sum, Plaintiff contends that the United States has failed to show by clear and convincing evidence that this case should be transferred to Oklahoma. The Court will analyze each element related to transfers of venue.

### A. The Plaintiff's Choice of Forum

The Tenth Circuit has held that unless the balance of interests is strongly in favor of transfer, the plaintiff's choice of forum should not be disturbed. *Scheidt*, 956 F.3d at 965. However, courts accord less weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum. *Navajo Nation v. Urban Outfitters, Inc.*, Case No. 12 CV 195 LH/WDS, — F. Supp. 2d —, 2013 WL 258414, *6 (D.N.M. Jan. 16, 2013) (slip op.) (denying transfer of venue because Navajo Nation had significant link to New Mexico and some of the infringing acts occurred in New Mexico). The United States asserts that New Mexico has no meaningful connection to the actual events that form the basis for Plaintiff's claim of medical malpractice. Moreover, the events that transpired prior to Tsosie-Hohenstein's arrival at LIH, and which are crucial to the United States' defense, occurred in Oklahoma. Other than the fact that Plaintiff resides in New Mexico and that medical personnel who cared for Tsosie-Hohenstein during the month prior to her death are in New Mexico, this state has no tie to the events at issue here. In contrast, the critical events that caused Tsosie-Hohenstein to seek emergency medical attention and the actual medical care that allegedly led to Tsosie-Hohenstein's death, occurred in Oklahoma giving Oklahoma a more significant connection to this case. Thus, Plaintiff's choice of forum, while an important consideration, is not decisive for maintaining the lawsuit in New Mexico.

B. Accessibility of Witnesses and Other Sources of Proof; Availability of Process

This factor is most important in analyzing whether to transfer venue. 15 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3851 (2d ed. 1986). In this case the known witnesses related to Tsosie-Hohenstein's emergency medical care reside in Oklahoma. However, Plaintiff's witnesses, herself and members of her family, with the exception of one, reside in New Mexico.

In the JSR, Plaintiff lists as her first four witnesses persons who are members of Tsosie-Hohenstein's family: Plaintiff, who resides in New Mexico; Dwight Kenneth Hohenstein, Tsosie-Hohenstein's father who resides in North Dakota; Buckskin Gabriel Tsosie-Hohenstein, Tsosie-Hohenstein's brother, who resides in New Mexico; and Terrie Lynn Tsosie-Hohenstein, Tsosie-Hohenstein's sister, who lives in New Mexico. The next two witnesses on Plaintiff's list are the two people who were with Tsosie-Hohenstein on June 22, 2010 and who took Tsosie-Hohenstein to the LIH emergency room: Nicole Cheromiah, address unknown, and Quinton Silverhorn, address unknown. Since these two witnesses were with Tsosie-Hohenstein prior to her trip to the LIH emergency room, it is likely that they may be found in Oklahoma. Plaintiff generally lists the following witnesses: health care providers at the LIH; health care providers employed by Kirk's Ambulance Service, located in Lawton, Oklahoma; and health care providers at Comanche County Memorial Hospital located in Lawton, Oklahoma. Finally, Plaintiff lists two other categories of witnesses in the JSR: health care providers at San Juan Regional Medical Center, in New Mexico; and health care providers at Bloomfield Nursing & Rehabilitation Center, in New Mexico. Plaintiff also attached the opinions of two experts to her Response: Dr. Michael G. Seneff located in Chevy Chase, Maryland; and Dr. Robert Reiser, whose address is not indicated.

The United States lists four witnesses in the JSR who are employed at LIH: Wilhemina Dawson, M.D., Tsosie-Hohenstein's treating physician on June 22, 2010; Frances Martin, R.N.; Ophelia Richey, R.N.; and Capt. Scott Trapp, LIH Hospital Administrator. The United States has designated several witnesses as "unwilling witnesses": Kevin Louder, EMT employed by Kirk's Emergency Services, Inc. in Lawton Oklahoma; Michelle Ponder, M.D. and John S. Dennis, D.O., both employed by Diagnostic Imaging Services in Tulsa, Oklahoma; Nicole Cheromiah and Quiton Silverhorn, mentioned above with unknown addresses; David McElhaney, ambulance driver employed by Kirk Ambulance Service, in Lawton, Oklahoma; and Randall Harris, M.D., Jeffrey Miller, M.D., and Nabila Elzind, M.D., the three physicians who treated Tsosie-Hohenstein at Comanche County Memorial Hospital, in Lawton, Oklahoma.

As the United States points out, only three of Plaintiff's witnesses would have to travel to Oklahoma from New Mexico, but thirteen of the United States' witnesses would have to travel to New Mexico for trial. More importantly, the United States' "unwilling" witnesses, are all located in Oklahoma and possibly would have to be subpoenaed to testify in Oklahoma. In *Cook*, the court gave substantial weight to the venue that had the power to subpoena witnesses for testimony at both depositions and trial. *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) (transferring case to Oklahoma because Kansas court could not compel the attendance of witnesses who lived in Bartlesville, Oklahoma, where the accident occurred). The United States correctly argues that the New Mexico venue will deprive it of the right to compel the attendance of these unwilling witnesses. Under Fed. R. Civ. P. 45(b)(2), the subpoena power of this Court extends to places outside this district that are within 100 miles of the place of trial measured by a straight line on a map. *Id.* (citing *Hill v. Equitable Bank*, 115 F.R.D. 184, 186 (D. Del.1987)). According to the United States, Lawton, Oklahoma is 500

miles from any federal courthouse in New Mexico. Thus, the United States will not be able to exercise the court's compulsory subpoena power in this district to compel the attendance of unwilling non-resident witnesses. While the United States may present deposition testimony of any unavailable witnesses, it would be unfair to force it to present a significant portion of its case by deposition. *Id.* (citing *Farr v. Designer Phosphate and Remix Intern.*, 777 F.Supp. 895, 896 (D. Kan. 1991)). Consequently, this significant factor weighs in favor of transfer.

### C. Costs of Making Necessary Proof

The United States points out that at this early stage of the litigation, this factor does not weigh heavily either way.[3] It is helpful to consider the number of witnesses who would have to travel if transfer is denied or granted. As mentioned in the previous section, the United States has thirteen witnesses, all of whom would have to travel to New Mexico for a trial. Plaintiff has three New Mexico residents, an unknown number of New Mexico health care providers from San Juan Regional Medical Center and Bloomfield Nursing & Rehabilitation Center, and two expert witnesses, apparently from neither New Mexico nor Oklahoma, who would have to travel to Oklahoma for a trial. A simple comparison shows that the travel costs for witnesses would be greater if the case remained in this district. Plaintiff asks the Court to consider the relative means of the parties in considering this cost factor. Plaintiff asserts that as a governmental entity, the United States has far more resources than she has and can bear the travel costs of litigation easier than she could. *See Navajo Nation*, 2013 WL 258414, at *11 (finding that the costs of litigation favored transfer because defendant, a Pennsylvania corporation, would incur much higher expenses litigating in New Mexico while the Navajo Nation had significant

---

[3] Notably, discovery in this case has been stayed until the disposition of the Motion.

resources even though many of its individual members lived at a poverty level). Under this standard, Plaintiff appears to be at a financial disadvantage compared to the United States. The Court finds that the costs of litigation weigh in favor of denying the Motion.

D.  Enforceability Of A Judgment

Enforceability of a judgment is equally obtainable in New Mexico and Oklahoma; therefore, this factor is neutral to the Court's determination.

E.  Relative Advantages and Obstacles To A Fair Trial

The United States asserts that it cannot identify any advantages or disadvantages or obstacles to a fair trial in New Mexico or Oklahoma; therefore, this factor is neutral to the Court's determination.

F.  Congested Dockets

The Tenth Circuit has held that the most relevant statistics related to this factor "are the median time from filing to disposition, the median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (citing Administrative Office of the United States Courts, Federal Court Management Statistics, available at http://www.uscourts.gov/cgi-bin/cmsd2008.pl (2008)).  Exhibit 1 to the Motion is a table which compares the number of civil cases by federal district and the time interval from filing to termination of the cases.  The table illustrates that even though the Western District of Oklahoma consistently has higher numbers of cases in each category, the time period for each phase of a case is consistently longer in New Mexico.  The United States explains that this anomaly is due to the much larger criminal docket in New Mexico, a state that borders the Republic of Mexico.  *See* Ex. 2 Table D-1 *"Criminal Defendants Commenced, Terminated and Pending (Including Transfers)"* (comparing numbers of criminal cases in the federal districts).

11

The District of New Mexico has five times as many criminal cases as the Western District of Oklahoma. The overall data presented by the United States reveals that the New Mexico federal district courts are more congested than the courts in Western District of Oklahoma.

Plaintiff recognizes the statistical differences between this district and the Western District of Oklahoma; however, Plaintiff characterizes the differences as minor. The Western District of Oklahoma has a median time interval from the filing of a civil case to trial that is 267.84 days less than the interval in the District of New Mexico. Plaintiff mentions, but seems unconcerned with, this significant time difference. Plaintiff further states that each judge in the Western District of Oklahoma has 131 fewer cases pending than the judges in the District of New Mexico, and the judges in the Western District of Oklahoma have an average weighted case load per judge that is 181 cases less than the weighted filings per judge in the District of New Mexico. Plaintiff describes the differences between these districts as "small." Nevertheless, the Court finds that this factor should be weighted in favor of transfer.

### G. Conflict of Laws Issues

Both sides agree that there are no conflict of laws problems presented in this case because it is clear that Oklahoma state substantive law applies to the medical malpractice claims. However, all federal courts are presumed to be equally competent in the laws of each state. *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (stating that conflict of laws factor is "less significant because federal judges are qualified to apply state law."). Thus, this factor is neutral to the Court's determination.

### H. Questions of Local Law

The local interest factor, however, weighs in favor of transfer. The issues presented in this case involve the standard of care provided by the LIH to local Native American patrons.

These patrons have a strong interest in maintaining the appropriate standards of care in their medical community. In short, the quality of medical care at LIH is paramount to the Native American community living in and around Lawton, Oklahoma. Plaintiff argues that this district has an equally compelling interest in the quality of care because this case involves the status of Indian health care administered by the United States Department of Health and Human Services, which operates a national network of Indian health services facilities.

While the overall level of Indian health care is certainly an important national concern, the Court concludes that this factor weighs in favor of transfer. When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale. *See Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F.Supp.2d 569, 581 (D. Kan.2000) (transferring an action to a federal district court whose substantive state law applied to the contract); *see also Bailey v. Union Pac. R.R. Co.*, 364 F. Supp. 2d 1227, 1233 (D. Colo.2005) ("There is a local interest in having localized controversies decided at home." (internal quotation marks omitted)). The Western District of Oklahoma has an important interest in applying Oklahoma law regarding a local standard of medical care under the circumstances of this case.

I. Practical Considerations Making Trial Easy, Expeditious, and Economical

This "interest of justice" factor includes the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and all of the practical considerations that make the trial of the case easy, expeditious, and inexpensive. These considerations have all been discussed and favor transfer. One additional consideration is whether discovery conducted in New Mexico would have to be redone in Oklahoma if the case is transferred. Since discovery has been stayed pending this decision, the issue does not apply.

13

IV. Conclusion

The majority of the factors considered in a motion to transfer, especially the most important factor of accessibility of witnesses and the availability of process, weigh strongly in favor of transferring this case to the Western District of Oklahoma. A significant number of the most critical witnesses are located in Lawton and Tulsa, Oklahoma. In contrast, the State of New Mexico has little if any significant relationship to this litigation. Thus, the Western District of Oklahoma is a far more convenient and logical venue for this action.

IT IS ORDERED that the MOTION TO TRANSFER (Doc. No. 17) is granted and this case is transferred to the United States District Court for the Western District of Oklahoma.

*James A. Parker*
_____
SENIOR UNITED STATES DISTRICT JUDGE